**CASE NO. 25-40832**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

**Pamela Hartt, Individually, as Next Friend of J.H., Minor; Shane Hartt, as Next Friend J.H., Minor,**
**Plaintiffs - Appellants**

**v.**

**Evadale Independent School District, Steve Hyden,**
**Defendants - Appellees**

---

**On Appeal from the United States District Court**
**For The Eastern District of Texas,**
**Beaumont Division; Civil Action No. 1:24-cv-00063;**
**Before the Honorable Michael Joseph Truncale, Judge Presiding**

---

## APPELLANTS' BRIEF ON THE MERITS

Respectfully submitted,

/s/ Martin J. Cirkiel
Martin J. Cirkiel
Texas Bar No. 00783829
Fed. I.D. No. 21488
marty@cirkielaw.com [Email]
Cirkiel Law Group, P.C.
1005 West 41st Street, Suite 201
Austin, Texas 78756
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
**COUNSEL FOR APPELLANTS**

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>

In compliance with Fed. R. App. P. 28.2.1 and Fifth Circuit Local Rule 28.2.1, Counsel notes the number and styling of this case, is as follows:

1.    Pamela Hartt, Individually and a/n/f for J.H., Plaintiffs, Appellants v. Evadale Independent School District and Steve Hyden, Defendants-Appellees, No. 25-40832, IN THE U.S. COURT OF APPEALS, FOR THE FIFTH CIRCUIT.

2.    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

   a.    Pamela Hartt, Plaintiff, Appellee;

   b.    Pamela Hartt a/n/f for J.H., Plaintiff, Appellee;

   c.    Martin J. Cirkiel, Cirkiel Law Group, P.C. - Attorney for Plaintiffs, Appellees;

   d.    Evadale Independent School District - Defendant, Appellee;

   e.    Steve Hyden, Defendant, Appellee;

   g.    James E. Byrom, Thompson, Horton Law Firm, LLC, Attorneys for Defendants.

<div align="right">

<u>/s/ - Martin J. Cirkiel</u>
MARTIN J. CIRKIEL
Attorney for Plaintiff-Appellant

</div>

# <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant by and through her Counsel of Record, request Oral Argument in this cause and reasonably believes the decisional process would be significantly aided by oral argument, as otherwise contemplated by Fed R. App. P. 34(a)(1) and Fifth Circuit Local Rule 28.2.3.

<div style="margin-left: 40%;">

Respectfully submitted,

<u>/s/ - Martin J. Cirkiel</u>
MARTIN J. CIRKIEL
Attorney for Plaintiff-Appellant

</div>

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.      STATEMENT OF THE JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF THE ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.     ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII.    CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**TABLE OF AUTHORITIES**

Addington v. Farmer's Elevator Mutual Insurance Co., 650 F.2d 663, 666 (5th Cir. 1981), *cert. denied*, 454 U.S. 1098, 102 S. Ct. 672, 70 L. Ed. 2d 640 (1982). . . 32

Alex G. v. Bd. of Trustees, 387 F. Supp.2d 1119, 1128 (E.D. Cal. 2005). . . . . . 26

Alvarez- Sanders v. Texas Youth Commission, 2009 U.S. Dist. LEXIS 135912 (W.D., TX- San Antonio Division, April 29, 200) citing Zinkland v. Brown, 478 F3d 634, 637 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . 13

Balachandran v. Valvtechnologies, Inc., 2021 U.S. Dist. LEXIS 157294, 2021 WL 3639806 (S.D. TX- Houston Div., July 30, 2021. . . . . . . . . . . . . . . . . . . . . . . 24

Bank v. Keller Indep. Sch. Dist., 746 App'x 355, 364 (5th Cir. 2018). . . . . . . . . 9

Barker v. Riverside County Office of Educ., 584 F.3d 821 (9th Cir. 2009) . . . . 25

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . 16

Besser v. Tex. Gen. Land Off., 834 F. App'x 876, 886 (5th Cir. 2020) (*per curiam*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27

Byrd v. Bates, 220 F.2d 480, 482 (5th Cir. 1955). . . . . . . . . . . . . . . . . . . . . . 36

Conley v. Gibson, 355 U.S. 41, 45 46, (1957). . . . . . . . . . . . . . . . . . . . . . . . . 13

Deep East Texas Regional Mental Health & Mental Retardation Services v. Kinnear, 550 S.W.2d 550, 563 (Tex. App. – Beaumont, 1994) . . . . . . . . . . . . . . . . . . . 16

Delano-Pyle v. Victoria County, 302 F. 3d 567, 574-7 (5th Cir. 2002) *citing* Rizzo v. Children's World Learning Ctrs., Inc., 173 F.3d 254, 261 (5th Cir. 1999) . . 20, 21

Dewitt v. Proctor Hosp., 517 F.3d 944, 948 (7th Cir. 2008) . . . . . . . . . . . . . . 30

Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). . . . . . 12, 13

Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 598 (5th Cir. 1981) . . 31

Espina v. City of San Antonio, 2022 U.S. Dist. LEXIS 145097, 2022 WL 3362286 (W.D. TX- San Antonio Div., August 15, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . 24

Foman v. Davis, 371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Fountain v. Rupert, 819 F. App'x 215, 218 (5th Cir. 2020) . . . . . . . . . . . . . . . . 36

Franklin v. Gwinnett County Pub. Schools, 503 U.S. 60, 75 (1992) . . . . . . . . . . 15

Furstenfeld v. Rogers, No. 3-02- CV- 0357 L, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

General Star Indemnity Company v. Vesta Fire Insurance Corporation, 173 F.3d 946, 950 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Gentiello v. Rege, 627, F.3d 540, 546 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . 17, 33

Gray v. Greyhound Lines, East, 545 F.2d 169, 176 (D.C. Cir. 1976) . . . . . . . . . 22

Grimes v. Wal-Mart Stores Tex., L.L.C., 505 F. App'x 376, 380 n.1 (5th Cir. 2013) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Hackett v. McGuire Bros., Inc., 445 F.2d 442, 446 (3d Cir. 1971) . . . . . . . . . . 22

Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . 20

Harmony Behav. Health Servs., LLC v. Kent, 750 F. Supp. 3d 665, 2024 U.S. Dist. LEXIS 174356 (M.D. LA, Sept. 26, 2024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Harrison v. Rubin, 174 F3d 249, 253 (D.C. Cir. 1999) . . . . . . . . . . . . . . . 31,33, 37

Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006) . . . . 25

Hooker v. Dallas Indep. Sch. Dist., 2010 U.S. Dist. LEXIS 108886 *12 (N.D. Tex. Oct. 13, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 179 (2005) . . . . . . . . . . . . 15

Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 470 (2d Cir. 2019) . . . . . . . . . . 30

Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs., 974 F.3d 652 (6th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Laber v. Harvey, 438 F3d 404, 426-427 (4th Cir. 2006) . . . . . . . . . . . . . 31, 33, 37

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lowrey v. Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997) . 14

Lyn-Lea Travel Corp. v. American Airlines, Inc., 283 F.3d 282, 286 (5th Cir.), cert. denied, 537 U.S. 1044, 123 S. Ct. 659, 154 L. Ed. 2d 516 (2002) [quoting 1, 139 F.3d 494, 499 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Nicholson v. City of Clarksville, Tenn., 530 F. App'x 434, 448 (6th Cir. 2013). 29

Norris v. Opelika City Board of Education, 2020 U.S. Dist. LEXIS 215741, 2020 WL 6784357 (M.D. Ala.- Eastern Div., Nov. 18, 2020). . . . . . . . . . . . . . . . . . . . . . 25

North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 521 (1982); quoting United States v. Price, 383 U.S. 787, 801 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nowlin v. Resolution Trust Corp., 33 F.3d 498, 507 (5th Cir. 1994) . . . . . . . . 27

Plainscapital Bank v. Keller Indep. Sch. Dist., 746 App'x 355, 364 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Richard v. Regional Sch. Unit 57, 901 F3d 52 (1st Cir. 2018) . . . . . . . . . . . . . . 25

Roger Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 14; 120 S. Ct. 2097; 147 L. Ed 2d 105 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Round Rock Indep. Sch. Dist. v. Amy M., 540 F. Supp. 3d 679, 697 (W.D. TX, April 29, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

Ryan v. Shawnee Mission U.S.D. 512, 416 F. Supp. 2d 1090, 1095-96 (D. Kan. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 524; 125 L. Ed. 2d 407; 113 S. Ct. 2742 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Schmitz v. Alamance-Burlington Bd. of Educ., 2020 U.S. Dist. LEXIS 32699 (D. N.C. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000). . . . . . . . . . . . . . . . . . 13

Simonsen v. Thurston County Sch. Dist. 124 LRP 13324 (D. Neb. 04/23/24) . . 26

Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana, 252 F.3d 781, 786 (5th Cir.), cert. denied, 534 U.S. 995 (2001) . . . . 14

Spencer v FEI, Inc., 725 F. App'x 263, 267 (5th Cir. 2018) (*per curiam*) . . . . . 23

Stancu v. Highland Hilton/Hei Hotels & Resorts, 2023 U.S. Dist. LEXIS 231533, 2023 WL 9102226 (N.D. TX- Dallas Div., Dec. 4, 2023). . . . . . . . . . . . . . . . . . 23

Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1020 (8th Cir. 2005) . . . . . 30

Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000). . . . . 33

Tchereepnin v. Knight, 389 U.S. 332, 336 (1967) . . . . . . . . . . . . . . . . . . . . . . 16

Thompson v. Goetzmann, 337 F.3d 489, 495 (5th Cir. 2003) . . . . . . . . . . . . . . 13

Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 208 (1972) . . . . . . . . . 22

Trujillo v. PacifiCorp, 524 F.3d 1149, 1156 (10th Cir. 2008) . . . . . . . . . . . . . . 30

U.S. ex rel. Willard v. Humana Health Plan of Texas Inc., et al., 336 F.3d 375, 386 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

United States v. Price, 383 U.S. 787, 801 (1966). . . . . . . . . . . . . . . . . . . . . . . . 15

Walker v. Regina Coeli Child. Dev. Ctr., 2026 U.S. Dist. LEXIS 82527 (E.D. LA, April 15, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Weixel v. Bd. of Educ., 287 F.3d 138, 148 (2d. Cir. 2002) . . . . . . . . . . . . . . . . 25

Williams v. City of Indianola, 2025 U.S. Dist. LEXIS 45824 (N.D. MS- Greeneville Div., March 13, 2025). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 535; 127 S. Ct. 1994; 167 L. Ed. 2d 904 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**FEDERAL LAW**

28 U.S.C.A. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C.A. §1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 794(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §12132 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

42 U.S. Code § 2000d. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("ADA"). . . . . *passim*

Equal Pay Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fair Labor Standards Act (FLSA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Family and Medical Leave Act (FMLA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Individuals with Disabilities Education Act* ("IDEA") . . . . . . . . . . . . . . . . *passim*

Occupational Safety and Health Act (OSHA)

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Title IX of the Education Amendments Act of 1972 (2018) . . . . . . . . . . . . . *passim*

Whistleblower Protection Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## **FEDERAL RULES**

28 C.F.R. § 35.130(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

34 C.F.R. § 100.7(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 15(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# I. STATEMENT OF JURISDICTION

This is an appeal by the Plaintiffs-Appellants in a civil case. The District Court had jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution and laws of the United States. More specifically that Pamela Hartt was a victim of associational disability discrimination pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504" or "the Rehab Act") against the School District. Further, Hyden violated her rights under Texas Law and the common law.[1]

The Trial Court issues a Order denying the Motion for Reconsideration on November 20, 2025 (ROA.376). Appellant filed her *Notice of Appeal*[2] on December 20, 2025 (ROA.387), in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure.

This Court of Appeals has jurisdiction to hear this appeal pursuant to 28 U.S.C. §1291 and Federal Rule of Appellate Procedure.

## II. STATEMENT OF THE ISSUES

1.    Did The District Court Err In Granting The School District's Fed. R. Civ. P.

---

[1].  There were other constitutional, federal and state law claims, since abandoned and not part of this appeal.

[2]. Pursuant to Local Rule 28.2.2, the record from the District Court Of The United States has been filed with this Court Of Appeals for the Fifth Circuit and will be cited as (ROA. XXX).

12(b)(6) *Motion To Dismiss* Hartt's Associational Discrimination Based upon

Disability Claim pursuant to Section 504 of the Rehabilitation Acts of 1973,

29 U.S.C. §794?

2.      Did The District Court Err In Denying Hartt's Fed. R. Civ. P. 59(e) *Motion For*

*Reconsideration*?

3.      Did the District Court Err by Not Permitting Hartt to *Amend* her Complaint?

## II.  <u>STATEMENT OF THE CASE</u>

A.      Factual Resume

1.      ABOUT EVADALE ISD AND STEVE HYDEN

4.      The Evadale ISD is a public school district located in Jasper County, Texas. It has two campuses, the Evadale Elementary and Junior High School, which serves students in kindergarten through eighth grade, and the Evadale High School, which serves students in grades nine through twelve. During the 2021-2022 academic year, Mr. Steve Hyden served as EISD's Superintendent. Hyden resigned from his position of Superintendent in or around November 2022. (ROA.105). The School Resource Officer was Kevin Brewster. (ROA.110).

2.      ABOUT PLAINTIFF

5.      Plaintiff Pamela Hartt still resides within Evadale, Texas, with her three

children and husband. For the time period relevant to this cause she was a Career and Technical Education ("CTE") Class teacher and employee of the district. She worked from July 1, 2015 to May 31, 2022 when she was "run off". One of the children, J.H., had multiple disabilities and was deemed eligible for special education services pursuant to the *Individuals with Disabilities Education Act* ("IDEA"). (ROA.105).

6.  In and around the Fall 2021 semester hartt had concerns about what she perceived as the failure of the School District to provide her daughter the special education services she deserved under be IDEA. She notified the District of her intent to file what is called a *Request For A Due Process Hearing* ("DPH") with the Texas Education Agency ("TEA") in early January of 2022. At this time, she was assigned to the Evadale High School Campus. Shortly thereafter, she was demoted from the high school campus to the middle school campus upon directive by the then School Superintendent Steve Hyden. Pamela was told it was due to "overstaffing" and under-enrollment in her courses on campus but that was not true. Of note, notwithstanding this so-called "overstaffing" Hyden hired two male employees who both previously had sexual relationships with EISD students. (ROA.106).

3.      THE HARASSMENT BEGINS

7. At the same time of demotion Hyden began to harass Hartt. In early March Hyden entered Hartt's classroom and said something along the lines of, "If you want to resolve the issues with your daughter, I can use some sexual favors." Just days later Hyden entered her classroom again with Hyden saying something along the lines of, "There are other ways to get [daughter's] case resolved, if you want to perform for me." Then Hyden threatened her, snapping his fingers and saying something like, "I can ruin you like 'that." Hyden brought in SRO Brewster, the then-School Resource Officer, to further intimidate and Hartt and watch her through the classroom door window. This intent was clear- force her to drop the complaint against the School District that she had filed with the TEA. (ROA.107). Shortly thereafter Hyden "amped up" the pressure, first by alleging Hartt had forged a document on her son's behalf and then placing her on Administrative Leave. (ROA.107). Hartt believes someone at Hyden's directive forged her signature. As a condition of the administrative leave, Hartt was not permitted to have any contact with any District staff, employees, or agents, nor any parent of any student in the District, nor any student within the District and had to turn in her keys to the classroom. When Hartt told Hyden she wanted to consult with an attorney things worsened. (ROA.108).

8. He then filed a complaint against her license with the Texas State Board for Educator Certification ("SBEC")[3] with allegations of forgery without telling the School Board. As was customary at that time of the year the Board issued her a new contact and it was placed in her classroom. Unfortunately, Hyden did not permit her to get it for signing. (ROA.109). Pamela was later cleared of any forgery allegations after completing a forensic handwriting test. However, she was never offered a new employment renewal contract. (ROA.109).

9. In November 2022, Hartt's brother ran for Evadale ISD School Board and was elected. Around this same time, Hyden filed a second SBEC complaint against Pamela's teaching license[4] and resigned from the Board. Even so, Hyden continued to stalk Hartt around Evadale and neighboring towns well into December. He followed Hartt when she was driving and would purposefully ride close to her bumper. He followed her to the grocery story, when she was picking up her children from school and even when she was driving outside of town. During this period Hyden also had SRO Brewster communicate with the local Justices of the Peace, asking them to arrest Hartt for some imaginary offense. Early the next year Brewster was placed on leave for inappropriate

---

[3]. The SBEC oversees the certification of and standards for public school educators in Texas.

[4]. It is not part of the record but for informational purposes the claims against Hartt with the TEA were resolved.

conduct, which, like Hyden, turned out to be the harassment of women. (ROA.110).

B. Procedural Resume

10. On May 6, 2024 Hartt filed her *Original Complaint* with claims against the School District for her daughter and herself pursuant to the 1st and 14h Amendments to the United States Constitution, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") and the Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("ADA"). Separately Hartt alleged claims pursuant to Title VII of The Civil Rights Act of 1964, 42 U.S.C. 2000(e) ("Title VII") and Title IX of the Educational Acts of 1972, 20 U.S.C. 1681 et seq. ("Title IX" ). She also had a common law claim of *Intentional Infliction Of Emotional Distress* against Steve Hyden for acts of harassment, sexual and otherwise. Among other things Hartt noted she reserved the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. (ROA.009,010).

11. On May 24, 2024 the School District on behalf of themselves and Hyden filed a *Motion To Dismiss* for all claims against all Plaintiffs. Among other things, it did not mention Hartt's request to amend. (ROA.028).

12. Hartt *filed a First Amended Complaint* on June 28, 2024. It modified and

added some facts. It also added an statutory claim against Hyden. Hartt again reserved the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. (ROA.102)

13. A *Joint Scheduling Conference Court* was filed on July 7, 2024. Among other things it noted Hartt could amend without leave of court before September 24, 2024, but would need leave of court to do so thereafter. Discovery would need to end by May 9, 2025. (ROA.119,120).

14. On July 12, 2024 the District and Hyden filed a *Motion To Dismiss* all claims against all parties. (ROA.126). Most germane to this appeal they argue that Hartt's claims pursuant to the Rehab Act and the ADA for *associational discrimination* are without merit. Further, that mother's:

"complaints and threats to file a due process complaint (as opposed to J.H.'s disabilities) are what cause caused Hartt to experience an adverse employment action. Therefor, Plaintiff failed to allege facts that Hartt's " adverse about filing a complaint with the Texas Education Agency are what caused Hartt's adverse employment action. Therefore, Plaintiffs failed to allege facts that Hartt's association with J.H. was a determining factor for the District's employment actions. <u>Garcia v. Oceans Healthcare, L.L.C.</u>, No. 2:22-CV-00219, 2023 WL 6393885, at *4 (S.D. Tex. Sept. 30, 2023) [holding that plaintiff failed to assert a legally cognizable claim for associational disability discrimination under the ADA and Section 504 because the complaint was devoid of allegations that plaintiff's mother's disability was a determining factor for her termination). (ROA.139, 140).

15. In regard to Hartt's claim against Hyden for *Intentional Infliction of Emotional*

*Distress* ("IIED") Hyden argued it was pre-empted because Hartt had also alleged facts in support of a Title IX claim, and the case does not permit both. Further, and in any case Hyden's actions "do not rise to the level of egregiousness ... to support such a claim." (ROA.144).[5]

16. The Court ordered the parties to Mediation on January 14, 2025. (ROA.153).

17. Appellants filed their *Response to the Motion To Dismiss* on September 03, 2024. (ROA.162). Hartt waived her own 1st Amendment retaliation claim and all of J.H.'s claims but retained the retaliation claim pursuant to the Rehabilitation Act and otherwise answered all other claims against the District and Hyden. (ROA.164). She again noted her right to amend. (ROA.168). Importantly and germane to this appeal Hartt noted that Hyden did not address the common law IIED claim for the time period *after* Hartt was no longer an employee. Nor did he address this claim for the period he was no longer an employee of the School District or otherwise protected by any state or federal immunities. Hartt argued these failures acted as waiver, meaning the IIED

_____

[5]. Hyden's arguments only contemplates and can only contemplate, the time period when both Hartt and Hyden worked at the School District. When Hartt was terminated by the District in May of 2022, any acts by Hyden thereafter are not covered by the caselaw cited because Hartt no loner had a plausible Title IX claim   Her suit against Hyden was now in her capacity as a private citizen. Moreover, the caselaw cited does not cover the period after November when Hyden was no longer an employee of the District but continued to harass Hartt until the end of the year.

claim against Hyden after she no longer an employee was plausible or in the alternative the IIED claim against Hyden after he no longer was an employee was plausible (ROA.178,182), <u>Plainscapital Bank v. Keller Indep. Sch. Dist</u>., 746 App'x 355, 364 (5th Cir. 2018).

18.  The School District and Hyden filed a *Reply*. They School District admits they did not ratify his behavior after Hyden left the employ of the District in November of 2022. (ROA.193). As to the IIED claim itself, they first ague that Hyden's behaviors were not extreme and outrageous. (ROA.199). Moreover, that Hartt can't use the IIED claim because she has also pled a Title IX claim and it's use as a "gap filler" is not permitted where there is a parallel statutory (Title IX) claim pled. They argue that "all allegations against Hyden, both pre- and post employment (of Hartt) do not support an IIED claim. Also, Hartt does not even attempt to dispute this with their own caselaw as she does not cite to any.[6]" (ROA.200).

19.  Early in February of 2025 there was a flurry of activity regarding Hartt's intention to take depositions of a number of staff persons and to amend her complaint. (ROA.202). The District and Hyden filed motions to quash in opposition. (ROA.211). Counsel for Hartt conferred with Counsel for the

---

[6]. This comment is obviously intended to blame Hartt, when it was really the School District that failed to address this time period in the first instance.

School District and Hyden, regarding the need for more time to continue with discovery and depose certain staff persons. Counsel graciously did not oppose this request. (ROA.268). It was granted on February 13, 2025. Discovery was extended to August 8, 2025. (ROA.278).

20. In light of the above, on the very next day the parties filed a *Joint Motion To Abate* . It confirmed there was no need for the Court to rule on the deposition notices and related motions to quash, in light of the mutual understanding that Hartt would not only be seeking further discovery, would (re)notice depositions but was doing so with the intent to file a second amended complaint within the time period contemplated by the revised scheduling order. (ROA.282). It was granted by the Magistrate Judge on February 21, 2025 specifically noting that Hartt would be seeking to amend her complaint. (ROA.288). Mediation was set for February 24th (ROA.153), but light of all the above, was canceled. (ROA.287).

21. Unfortunately for Hartt, just a few weeks later and before she was able to (re)schedule depositions, on March 13, 2025 the District Court Judge granted the School District's and Hyden's motions to dismiss. (ROA.293). The Judge ratified the School District's position that Hartt's claim for associational disability discrimination failed because the retaliation Hartt experienced was

based upon her complaints, not her daughter's disabilities. (ROA.308). The Judge ratified the Hyden's position that he was immune under state law from any of Hartt's claims, while he was employed by the District. (ROA.312). In regard to any of the acts alleged against Hyden after he no longer was employed by the District, they were not egregious enough to satisfy the elements of an IIED claim, and the claims Hyden in his individual capacity were dismissed. (ROA.314).

22. Hartt filed a *Rule 59(e) Motion for Reconsideration* arguing among other things the Judge committed a "clear error of law" as to her association discrimination based upon disability claim. (ROA.341,343). Additionally the Judge committed a "clear error of law" when rejecting Hartt's motion for leave to file an *Amended Complaint* which deleted the IIED claim and added new facts of Hyden's actions after he was no longer working at the school district. (ROA.332,345). It replaced the IIED claims with claims of *Stalking* and *Intrusion Upon Seclusion*. (ROA.334). She argued it would be unfair not to let her amend the complaint in light of the fact, the parties had submitted pleadings that contemplated Hartt's expectation to amend which were acceptable to Counsel for the District and Hyden, ratified by the Magistrate Judge. And additionally, the District Judge did not provide any rationale for

not permitting her to do so. (ROA.347).

23.    The District filed a *Response* simply reaffirming their earlier (successful) arguments as to why the Court did not err as to the associational disability discrimination claim.   (ROA.353). As to Hartt's request to amend her complaint Hyden does not respond to Hartt's argument that by and through is counsel, previously agreed to an amendment. In regard to the usual arguments against permitting a party to amend, they argued it would be prejudicial as it would require additional discovery and briefing.  (ROA.354).

24.    Hartt filed a *Reply* reiterating her argument the District only addressed the associational disability discrimination retaliation claim relative to the ADA and not the Rehab Act, which is waiver. Moreover and any, Hartt underscored the District's Judge's error on this matter with additional caselaw. (ROA.366,369). In regard to her request to amend, Hartt argued Hyden was *judicially estopped* from doing so.  Further, she was diligent in her efforts to do so. (ROA.371). Last, she re-urged the point the District Court never gave a  reason she could not amend her pleadings. (ROA.372).  As to all, it wold be manifestly unjust not to grant Hartt the relief she now seeks.

25.    The Judge denied both the *Motion to Reconsider* and the *Motion For Leave To File The Second Amended Complaint*. (ROA.376).

26. Hartt filed a timely *Notice of Appeal*. (ROA.385).

## IV.  <u>STANDARD OF REVIEW</u>

A.    STANDARD OF REVIEW BY THE APPELLATE COURT

27. The Court of Appeal reviews the grant of a motion to dismiss *de novo*. <u>Dorsey v. Portfolio Equities, Inc.,</u> 540 F.3d 333, 338 (5th Cir. 2008). Moreover, any due weight or deference that may otherwise be given to the District Court is not implicated with respect to *issues of law.* <u>Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.,</u> 397 F.3d 77, 82 (2d Cir. 2005).

B.    STANDARD OF REVIEW FOR AS 12(b)(6) MOTION TO DISMISS

28. A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of its claims that would entitle it to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45 46, (1957); <u>Thompson v. Goetzmann</u>, 337 F.3d 489, 495 (5th Cir. 2003); <u>Shipp v. McMahon</u>, 199 F.3d 256, 260 (5th Cir. 2000). Moreover, the complaint must be liberally construed in favor of the plaintiff and the allegations contained therein must be taken as true. All reasonable inferences must inure to the benefit of Plaintiffs, as well. <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 164 (1993); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).

29. Further, the exacting standards governing Rule 12(b)(6) motions must be considered in light of the liberal pleading requirements of Rule 8(a). <u>Furstenfeld v. Rogers</u>, No. 3-02- CV- 0357 L, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002). Federal Rule of Civil Procedure 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). A complaint will be deemed inadequate under Rule 8(a) only if it fails to: (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. <u>General Star Indemnity Company v. Vesta Fire Insurance Corporation</u>, 173 F.3d 946, 950 (5th Cir. 1999).

30. A review of Plaintiff's Rule 8 pleading requirements evidence B.P.'s pleadings are sufficient to support its claims on the merits is not a question for consideration in connection with the 12(b)(6) motion. <u>General Star Indep. Co. v. Vesta Fire Ins. Corp.</u>, 173 F.3d 946, 951 (5th Cir. 1999). Motions to dismiss for failure to state a claim are viewed with disfavor in this circuit and are rarely granted. <u>Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana</u>, 252 F.3d 781, 786 (5th Cir.), cert. denied, 534 U.S. 995 (2001); <u>Lowrey v. Texas A&M University System</u>, 117 F.3d 242, 247 (5th Cir.

1997). It is well-settled that liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to  issues and to dispose of un-meritorious claims. Furstenfeld at *5.

C.     STANDARDS OF REVIEW FOR DISCRIMINATION CASES

31.    In <u>Roger Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 14; 120 S. Ct. 2097; 147 L. Ed 2d 105 (2000) the Court noted that it is particularly crucial in looking to the facts and the reasonable inferences from those facts in discrimination cases "as the question facing triers of fact in discrimination cases is both sensitive and difficult." Further, lower Courts should not treat discrimination cases with more scrutiny than other cases dealing with questions of fact, citing <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 524; 125 L. Ed. 2d 407; 113 S. Ct. 2742 (1993). This public policy is an important consideration when dealing with a case where a student has been victimized.

32.    The Supreme Court has noted in a Title IX case (which is equally applicable to related to discrimination based upon disability claims) that, "[t]he statute is broadly worded." <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 179 (2005).  Hence, "[t]here is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language.'" <u>North Haven Bd. of Educ. v. Bell</u>, 456 U.S. 512, 521 (1982); quoting <u>United</u>

<u>States v. Price</u>, 383 U.S. 787, 801 (1966). Further, "[d]iscrimination is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." <u>Jackson</u>, 544 U.S. at 175 (internal quotations omitted.). Further, "Congress enacted Title IX not only to prevent the use of federal dollars to support discriminatory practices, but also to provide individual citizens effective protection against those practices." <u>Jackson</u>, 544 U.S. at 180. "Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe." <u>Franklin v. Gwinnett County Pub. Schools</u>, 503 U.S. 60, 75 (1992).

Moreover:

"Statutes of rehabilitation should be construed in a liberal and humanitarian mode thus effectuating successfully the legislature's objective intentions. Such construction of rehabilitative statutes promote the public interest, public welfare, public state policy and the police powers. Such salutary constructions properly disregard technical and meaningless distinctions but give the enactment the most comprehensive application of which the enactments are susceptible without violence to the language therein. <u>Deep East Texas Regional Mental Health & Mental Retardation Services v. Kinnear</u>, 550 S.W.2d 550, 563 (Tex. App. – Beaumont, 1994);" *see also* <u>Tchereepnin v. Knight</u>, 389 U.S. 332, 336 (1967) [remedial legislation should be construed broadly to effectuate its purpose].

33. Plaintiff clearly and easily meets the standards of Rules 8, and 12(b)(6) as contemplated by <u>Twombly</u> relative to her claims based upon Section 504 of the Rehabilitation Act of 1973 and the Americans With Disabilities Act.  As such,

B.P. met her initial pleading burden. The School District's *Motion To Dismiss* should have been denied, in total and in the alternative, in part and the failure to do so was error.

D.   STANDARD OF REVIEW ON RIGHT TO AMEND

34.   Nevertheless, as B.P. wrote on numerous occasions , that is the Court believed her complaint failed to state a claim upon which relief could be granted, in total or in part, then before granting the motion, B.P. should have been given the opportunity to replead. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) [the 5th Circuit supports the premise that "granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim ...] and "when justice so requires." Fed. R. Civ. P. 15(a)(2).

35.   The Appellate Court generally uses an abuse of discretion standard of review in determining whether or not a District Court erred when denying a request to amend a complaint, Gentiello v. Rege, 627, F.3d 540, 546 (5th Cir. 2010) as the District Court did in this case.

E.   STANDARD OF REVIEW REGARDING A RULE 59(e) MOTION

36.   Likewise, a district court's denial of a motion to alter or amend judgment "is reviewed for abuse of discretion and need only be reasonable." Edionwe v.

<u>Bailey</u>, 860 F.3d 287, 291(5th 2017).

## IV. <u>SUMMARY OF THE ARGUMENT</u>

37.   Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 like other civil rights statutes contains   has anti-retaliation language (with supporting jurisprudence) which broadly prohibits acts that "intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any rights a person with a disability has under the Rehab Act.  It is uncontroverted that a child with a disability has very specific rights under the *Individuals With Disabilities Education Act*, as does her mother, Pamela Hartt, with both otherwise protected by the ant-retaliation language in the Rehab Act. Importantly that acts of intimidation taken against an individual who files a complaint, testifies, or otherwise participates in an investigation on behalf of a person with a disability is absolutely protected.

38.   That is exactly what happened here. Pamela Hartt told Hyden and School District Staff she was filing a complaint with the Texas Education Agency because of the District's failure to provide her daughter  the Special Education Services she deserved, as contemplated by the IDEA.  The facts and reasonable inferences related thereto provide clear support for Hartt's contention she was a victim of retaliation because of this protected advocacy on behalf of her

daughter. The caselaw is clear- Hartt was protected by the anti-retaliation measures of the Rehab Act. The District Court erred when finding otherwise and *granting* the School District's Rule 12(b)(6) *Motion To Dismiss* on the matter. Hartt filed her *Rule 59(e) Motion For Reconsideration* asking the Good Judge to correct this error of law, but refused to do so. The failure to *Grant* Hartt's *Motion For Reconsideration* was not just an abuse of discretion but was also *manifestly unjust* in light of the absolute litany of abuses that Hartt experienced at the hands and direction of Hyden and the jurisprudence that supports her position.

39. Similarly the District Judge abused his discretion by not permitting Hartt to amend her complaint, especially in light of the fact the School District was not just unopposed to Hartt's intent to do so, but the Magistrate Judge just weeks before gave tacit approval for Hartt to do so. There was no caselaw that the School District cited, nor any relied upon by the Judge, that supported their position on the matter. Moreover, the caselaw disfavors *repeated* (emphasis added). Here Hartt only amended once, a one time *repeat.* There were no *repeated* attempts. Last, the suggested amendment did no more than add facts Counsel already knew about, as they pertained to acts by Hyden. No secrets here. True the amendment added some new claims but that by itself was not

prejudicial enough to have denied Hartt's request to amend. Here not only the law but also the equities favor Hartt as well.

40.  In summary, Hartt's appeal should be granted in total or in part, with the remaining claims sent back to the District Court with orders commensurate with the Panel's decision.

## V.  <u>ARGUMENT AND AUTHORITIES</u>

41.  Plaintiffs incorporate by reference, as if fully set forth herein all the above-noted paragraphs. Further, each succeeding paragraph and section incorporates by reference, as if fully set forth herein, the one above it.

A.  HARTT'S CLAIM SHE WAS VICTIM OF RETALIATION BECAUSE SHE ADVOCATED ON BEHALF OF HER DAUGHTER, A CHILD WITH A DISABILITY, WAS PLAUSIBLE AND THE DISTRICT COURT ERRED WHEN GRANTING THE SCHOOL DISTRICT'S RULE 12(b)(6) MOTION TO DISMISS

1.  About Discrimination Based Upon Disability

42.  Section 504 of the Rehabilitation Act of 1973, was enacted "to ensure that handicapped individuals are not denied benefits because of prejudiced attitudes or ignorance of others" in federally funded programs. <u>Brennan v. Stewart</u>, 834 F.2d 1248, 1259 (5th Cir.1988).

43.  The ADA states in relevant part:

"[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132 (1990); *see also* 28 C.F.R. § 35.130(b)(7) ["A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."].

The ADA is also a federal anti-discrimination statute designed "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Delano-Pyle v. Victoria County, 302 F. 3d 567, 574-7 (5th Cir. 2002) *citing* Rizzo v. Children's World Learning Ctrs., Inc., 173 F.3d 254, 261 (5th Cir. 1999). As the language in the ADA generally tracks the language set forth in the Rehab Act for this type of a claim, thus the "[j]urisprudence interpreting either section is applicable to both." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000) which includes anti-retaliation language in both. A School District can thus be liable under both for the acts and omissions of staff pursuant to either the Rehab Act or ADA or both, pursuant to the theory of *Respondeat Superior*. Delano-Pyle v. Victoria County.

2. The Rehabilitation Acts Contemplates Anti- Retaliation Protections

44. Under the Rehabilitation Act "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance[.]"

29 U.S.C. § 794(a). Accordingly, "[A]ny person aggrieved by any act or failure to act

by any recipient of Federal assistance" may bring suit under the Rehabilitation Act.

29 U.S.C. §794a(a)(2). This also includes a non-disabled persons who advocates on

behalf of a person with a disability and experiences an adverse action, or retaliation

because of such advocacy, *see* <u>Hooker v. Dallas Indep. Sch. Dist.</u>, 2010 U.S. Dist.

LEXIS 108886 *12 (N.D. Tex. Oct. 13, 2010), like Pamela Hartt.

45.     This broadly protective anti-retaliation regulation is firmly grounded in the

enforcement provisions of Title VI and the Rehabilitation Act. Title VI

extends its remedies to "any person aggrieved" by violations of the Act. 42

U.S.C. § 2000d-2, stating that "any person aggrieved . . . may obtain judicial

review of [any department or agency] action in accordance with chapter 7 of

Title 5." The Rehabilitation Act extends its remedies to "any person aggrieved

by any act or failure to act by any recipient of Federal assistance . . . under

section 794 of this title." 29 U.S.C. §794a(a)(2). Courts have construed the

phrase "any person aggrieved" as an expression of Congressional intent to

accord standing to the fullest extent permitted by the case and controversy

provision of Article III. *See e.g.*, <u>Trafficante v. Metropolitan Life Ins. Co.</u>, 409

U.S. 205, 208 (1972) [holding that the term "aggrieved person" in § 810(a) of

the Fair Housing Act, which the Act defined to include "[a]ny person who claims to have been injured by a discriminatory housing practice," demonstrated Congressional intent to confer standing to the fullest extent permitted by Article III]; Hackett v. McGuire Bros., Inc., 445 F.2d 442, 446 (3d Cir. 1971) [reaching the same conclusion regarding Title VII's language of "a person claiming to be aggrieved under the Act."]; *see also* Gray v. Greyhound Lines, East, 545 F.2d 169, 176 (D.C. Cir. 1976) [same]. Consistent with the broad construction of the statutory enforcement language of Title VI and the Rehabilitation Act, the anti-retaliation regulation applies to "any individual" who has been intimidated, threatened, coerced, or discriminated against "for the purpose of interfering with [protected rights]" under Title VI of the Civil Rights Act or the Rehabilitation Act. 34 C.F.R. § 100.7(e); *see* Id. §104.61 [incorporating the Title VI anti-retaliation regulation into the Rehabilitation Act].

3. The Elements Of An Associational Disability Discrimination Claim[7]

46. The Fifth Circuit has yet to recognize a cause of action for associational disability discrimination. *See* Spencer v FEI, Inc., 725 F. App'x 263, 267 (5th Cir. 2018) (*per curiam*). However, without recognizing the existence of this

---

[7]. This type of claim is also called an Associational Disability Discrimination Claim. They may be used interchangeably.

cause of action, it has indicated that a *prima facie* case would require the plaintiff to allege: "(1) her qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative and (4) that the adverse employment action occurred under circumstances raising a *reasonable inference* (emphasis added) that the relative's disability was a determining factor in the employer's adverse action."  Besser v. Tex. Gen. Land Off., 834 F. App'x 876, 886 (5th Cir. 2020) (*per curiam*); *see also* Grimes v. Wal-Mart Stores Tex., L.L.C., 505 F. App'x 376, 380 n.1 (5th Cir. 2013) (*per curiam*).  (ROA.308).

47.  Notwithstanding the 5th Circuit's failure to formally adopt this claim, many of the District Courts in the Circuit have in any case recognized this claim.  *See* Round Rock Indep. Sch. Dist. v. Amy M., 540 F. Supp. 3d 679, 697 (W.D. TX, April 29, 2021). Stancu v. Highland Hilton/Hei Hotels & Resorts, 2023 U.S. Dist. LEXIS 231533, 2023 WL 9102226 (N.D. TX- Dallas Div., Dec. 4, 2023); Espina v. City of San Antonio, 2022 U.S. Dist. LEXIS 145097, 2022 WL 3362286 (W.D. TX- San Antonio Div., August 15, 2022); Balachandran v. Valvtechnologies, Inc., 2021 U.S. Dist. LEXIS 157294, 2021 WL 3639806 (S.D. TX- Houston Div., July 30, 2021;  Walker v. Regina Coeli Child. Dev. Ctr., 2026 U.S. Dist. LEXIS 82527 (E.D. LA, April 15, 2026); Harmony

<u>Behav. Health Servs., LLC v. Kent</u>, 750 F. Supp. 3d 665, 2024 U.S. Dist. LEXIS 174356 (M.D. LA, Sept. 26, 2024); <u>Williams v. City of Indianola</u>, 2025 U.S. Dist. LEXIS 45824 (N.D. MS- Greeneville Div., March 13, 2025).[8]

    4.    The Elements Of An Associational Disability Discrimination Claim Extend To A Person Advocating On Behalf Of A Student Receiving Special Education Services

48.    Protected actions include advocacy made on behalf of a student with a disability who receives Special Education Services under the *Individuals With Disabilities Education Act*, 20 U.S.C. §1401 et seq. ("IDEA") and/or Section 504 Accommodations pursuant to the Rehabilitation Act. *See, e.g.*, <u>Hooker v. Dallas Indep. Sch. Dist.</u>, 2010 U.S. Dist. LEXIS 108886 *12 (N.D. Tex. Oct. 13, 2010), <u>Round Rock Indep. Sch. Dist. v. Amy M</u> , 540 F. Supp. 3d 679, 697

---

[8]. As an aside and not necessarily crucial to the determination of this case, Appellant asks for the Panel to formally adopt this case of action as to the Rehab Act. Many other federal laws recognize such a private cause of action. *See also*, Title VII of the Civil Rights Act [Protects against retaliation for reporting discrimination or harassment]; Fair Labor Standards Act (FLSA) [Prohibits retaliation against employees for asserting their rights regarding minimum wage and overtime]; Occupational Safety and Health Act (OSHA) [Protects employees from retaliation for reporting unsafe working conditions]; Family and Medical Leave Act (FMLA) [Prohibits retaliation against employees for taking protected leave]; Whistleblower Protection Act [Shields federal employees from retaliation for reporting misconduct or violations of law; Equal Pay Act [Protects employees from retaliation for discussing or disclosing wage information]; Title VI of the Civil Rights Acts of 1964 [protects persons from retaliation for advocating on behalf of a person who has been a victim of discrimination based upon, race, nationality, county of origin (and religion)] and of course the Americans With Disabilities Act [protects persons from retaliation for advocating on behalf of a person who has been a victim of discrimination based upon disability]. In fact, the failure to extend anti-retaliation measures under the Rehabilitation Act would likely rise to the level of a separate claim of discrimination based upon disability and/or an equal protection violation.

(W.D. TX, April 29, 2021) and many of the Circuit Courts. Richard v. Regional Sch. Unit 57, 901 F3d 52 (1st Cir. 2018) [ultimately finding that a Maine district did not retaliate against a kindergarten teacher who referred two children with behavioral problems for special education evaluations]; Weixel v. Bd. of Educ., 287 F.3d 138, 148 (2d. Cir. 2002); Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs., 974 F.3d 652 (6th Cir. 2020) [fact parents approved of the Section 504 plans a Kentucky district developed for children did not prevent two school nurses from suing the district under the ADA and Section 504 over its response to their push for changes to the students' programs.]; Barker v. Riverside County Office of Educ., 584 F.3d 821 (9th Cir. 2009) [Plaintiff and a coworker filed a complaint with the U.S. Department of Education, alleging that defendant denied its disabled students a free appropriate public education had valid claim of retaliation]; Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006) [teacher who complained on behalf of student receiving special education had claim of retaliation when contract was reduced].

49.     In addition, many District Courts across the country , including those in Texas as noted above, have also agreed that the Rehabilitation Act has it own anti-retaliation measures that afford protection to those persons who advocate on

behalf of a child receiving Special Education Services and/or Section Accommodations, <u>Norris v. Opelika City Board of Education,</u> 2020 U.S. Dist. LEXIS 215741, 2020 WL 6784357 (M.D. Ala.- Eastern Div., Nov. 18, 2020); <u>Ryan v. Shawnee Mission U.S.D.</u> 512, 416 F. Supp. 2d 1090, 1095-96 (D. Kan. 2006) [school therapist fired for voicing concerns about inadequacy of district's programs for students with disabilities stated a retaliation claim under Section 504 after being reported to Child Protective Services for abuse]; <u>Alex G. v. Bd. of Trustees,</u> 387 F. Supp.2d 1119, 1128 (E.D. Cal. 2005) [plaintiffs' amended complaint is replete with allegations of retaliatory conduct]; <u>Simonsen v. Thurston County Sch. Dist</u>. 124 LRP 13324 (D. Neb. 04/23/24) [A general education teacher's history of complaining about the implementation of *Individualized Educational Plans* and District decision to suspend teacher protected]; <u>Schmitz v. Alamance-Burlington Bd. of Educ.,</u> 2020 U.S. Dist. LEXIS 32699 (D. N.C. 2020).[9]

50.    In fact, a parent who advocates for a child receiving special education services under the IDEA are especially protected. <u>Winkelman v. Parma City Sch. Dist.,</u> 550 U.S. 516, 535; 127 S. Ct. 1994; 167 L. Ed. 2d 904 (2007).  Here the Supreme Court found the *Individuals with Disabilities Education Act*, 20

---

[9].  There are many more.

U.S.C.. §1400 *et seq.*, grants parents independent, enforceable rights which are not only limited to certain procedural and reimbursement-related matters, but encompass the right and entitlement to advocate for a free appropriate public education for their child.

5. The District's Court 's Order Granting The School District's 12(b)(6) Motion

51. In the School District's *Motion* they did not deny that Hartt experienced an adverse employment action, was otherwise qualified for employment, and that the District she her child had a disability and received special education services. They only element they contested was the 4th element- that Hartt did not experience an adverse employment action because of her daughter's specific disabling conditions. (ROA.308). Notwithstanding Hartt's arguments and supporting caselaw otherwise, the Court agreed with the School District's argument and caselaw finding Hartt's "complaint is devoid of facts suggesting that Hyden or Evadale ISD began harassing and retaliating against her *because of* J.H.'s learning disability and dyslexia." (ROA.309).

52. This is a clear-cut incorrect analysis of the law by the District Court on this matter. Hartt meets the elements of an Anti-retaliation associational discrimination based upon disability claim.

6. Hartt Meets The Elements Of The Anti-Retaliation Provisions Of The

Rehabilitation Act

53. As noted above, Hartt can have a plausible cause of action against the School District if she can show is (1) qualified for the job, (2) experienced an adverse employment action, (3) the employer had knowledge of the employee's disabled relative and (4) that the adverse employment action occurred under circumstances raising a *reasonable inference* (emphasis added) the relative's disability was a determining factor in the employer's adverse action." Besser v. Tex. Gen. Land Off., 834 F. App'x 876, 886 (5th Cir. 2020) (*per curiam*). To establish a prima facie case of retaliation Hartt must also show the activity she engaged in was protected. Nowlin v. Resolution Trust Corp., 33 F.3d 498, 507 (5th Cir. 1994).

54. As noted by the litany of caselaw cited above this protection especially occurs when a parent is advocating on behalf of their child who receives special education services, as Hartt did here. A bit about each it relevant here. The record reflects that the School Board provided Hartt a contract, after Hyden started the harassment, though Hyden and his minions made it impossible for her to sign the contract. In short, she was qualified both before and after the harassment began. It is also uncontroverted the District knew Pamela Hart had a child with a disability receiving special education services at the School District. While the District did not argue that Hartt did not experience adverse

actions, they are still worthy of repetition here. Again shortly after Hartt stated she was going to file a complaint with the Texas Education Agency she was demoted from a specialized teaching position at the high school to a middle school teacher, Hyden started to frequently sexually harass her, had alleged she forged a document affecting her son's scholarship, had the School Resource Officer stalk her and later wander around the County asking the various Justices of The Peace to file criminal charges against her, told Hartt she could not even speak to anyone associated with the School District, locked her out of the building, placed her on administrative leave, filed a complaint against her teaching license with the Texas Education Agency and follow Hartt when she driving around the community, even when picking up her little daughter school.[10]

55. Here Hartt satisfies all the elements. She experienced adverse employment actions immediately after making complaints. Here the temporal proximity connection was also met. Nicholson v. City of Clarksville, Tenn., 530 F. App'x 434, 448 (6th Cir. 2013). Here there is more than enough support for Hartt's position she experienced retaliatory animus. At the motion to dismiss stage, courts "examine the complaint to determine whether it contains 'at least

_____

[10]. The proposed second amended complaint had even more!.

minimal support for the proposition that the employer was motivated by discriminatory intent.'" <u>Kelleher v. Fred A. Cook, Inc</u>., 939 F.3d 465, 470 (2d Cir. 2019)  If a plaintiff is performing her job satisfactorily and her only issues with her employer revolve around her association with a disabled person and filing a complaint, then that can raise an inference of discriminatory motivation. *See* <u>Dewitt v. Proctor Hosp.</u>, 517 F.3d 944, 948 (7th Cir. 2008) [noting that evidence of discriminatory motivation existed when employee was performing job well and only issue with employer revolved around healthcare costs for disabled dependent]; <u>Strate v. Midwest Bankcentre, Inc.</u>, 398 F.3d 1011, 1020 (8th Cir. 2005) [noting, in the summary judgment context, that a plaintiff's "apparently unblemished employment history with the Bank, spanning more than a decade of work, casts genuine doubt upon the Bank's stated reason for terminating her"); *see also* <u>Trujillo v. PacifiCorp</u>, 524 F.3d 1149, 1156 (10th Cir. 2008) [utilizing a totality of the circumstances approach in analyzing an ADA associational discrimination claim].

56.   Hartt meets all the elements of a Section 504 associational discrimination based upon disability claim.  The District Judge erred when granting the School District's *Motion To Dismiss.*  Hartt's appeal should granted.  The District Judge abused his discretion when not correcting the earlier infirm decision.

B.  THE COURT ERRED BY NOT GRANTING THE RULE 59(E) MOTION FOR RECONSIDERATION

1.  The Elements Of A Motion For Reconsideration

57.  Federal Rules Of Civil Procedure 59(e) permits a party to file a *Motion* to *Alter Or Amend A Judgment* within 28 days after such judgment is entered. The Court may grant a timely motion for reconsideration "for *any reason* (emphasis added) that would justify granting one on a party's motion." Such reasons include "a clear error of law or to prevent manifest." Alvarez- Sanders v. Texas Youth Commission, 2009 U.S. Dist. LEXIS 135912 (W.D., TX- San Antonio Division, April 29, 2000) *citing* Zinkland v. Brown, 478 F3d 634, 637 (4th Cir. 2007) ["Rule 59(e) in essence, gives the district court a chance to re-examine the evidence and correct any mistakes).

2.  Hartt Meets The Elements

58.  Hartt incorporates by reference, as if fully set forth herein, the pleading and arguments on this topic noted above.  There is no need to address them in length except to note the District Judge committed an error of law which affords no deference.  In addition and in the alternative, to permit Hyden and the School District who rarified all his behaviors to walk away unscathed would absolutely be manifestly unjust.

B.  HARTT'S MOTION FOR LEAVE TO AMEND SATISFIED OPERATIVE

5TH CIRCUIT CASELAW ON THE TOPIC AND THE COURT ERRED WHEN DENYING HER REQUEST TO AMEND

    1.       About A Rule 15(a) Motion For Leave Of Court To Amended

59.    It is well-settled that leave to amend should be granted is generally within the sound discretion of the district court. <u>Lyn-Lea Travel Corp. v. American Airlines, Inc.</u>, 283 F.3d 282, 286 (5th Cir.), *cert. denied*, 537 U.S. 1044, 123 S. Ct. 659, 154 L. Ed. 2d 516 (2002) [*quoting* 1, 139 F.3d 494, 499 (5th Cir. 1998)]. However, Federal Rule of Civil Procedure 15(a) also make it clear that the trial court is required to grant leave to amend "freely." <u>Id.</u> In fact, the language of R. 15 evidences a bias and predisposition in favor of granting leave to amend. Courts in this circuit have determined that the purpose of the bias in favor of allowing amendment of the pleadings is to assist the disposition of the case on its merits, and to prevent pleadings from becoming ends in themselves. <u>Dussouy v. Gulf Coast Investment Corp.</u>, 660 F.2d 594, 598 (5th Cir. 1981).

60.    Moreover, while leave to amend should not be granted automatically, the trial court should always err on the side of allowing an amendment. <u>Addington v. Farmer's Elevator Mutual Insurance Co.</u>, 650 F.2d 663, 666 (5th Cir. 1981), *cert. denied*, 454 U.S. 1098, 102 S. Ct. 672, 70 L. Ed. 2d 640 (1982); <u>Laber v. Harvey</u>, 438 F3d 404, 426-427 (4th Cir. 2006)[amendment is not prejudicial

if it merely adds theory of recovery to facts already pled and offered before discovery has ended]; <u>Harrison v. Rubin</u>, 174 F3d 249, 253 (D.C. Cir. 1999) [permitting amendment that clarifies legal theories].

61.    Last "[A] motion for leave to amend should not be denied unless there is *quoting* <u>Foman v. Davis</u>, 371 U.S. 178 (1962)] "undue delay, bad faith or dilatory motive on the part of the Movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment." <u>U.S. ex rel. Willard v. Humana Health Plan of Texas Inc., et al.</u>, 336 F.3d 375, 386 (5th Cir. 2003). Of course, a request to  amend can be denied if it would be futile to do so.  <u>Gentiello v. Rege</u>, 627 F. 3d 540, 546 (5th Cir. 2010)[bare bones request to amend is futile if it fails to apprise the facts plaintiff would plead] .   A proposed amendment is futile if it fails to state a claim upon which relief could be granted. Therefore, in determining futility, a Court will apply the "the same standard of legal sufficiency as would apply under Rule 12(b)(6)." <u>Stripling v. Jordan Prod. Co., LLC,</u> 234 F.3d 863, 872-73 (5th Cir. 2000).

2.    The District Court's Order

62.    The Court did not address the issue of whether or not Hartt could file an amended complaint after issuing the *Order* granting the District's and Hyden's

motions to dismiss. (ROA.314).

3.    The Motion For Reconsideration

63.    Hartt filed her *Rule 59(e) Motion For Reconsideration* arguing the Court erred by not permitting her to amend her then previous first amended complaint. (ROA.320).  Among other things she cited the above noted procedural resume, where Hartt noted her intent to file an amended complaint in all her pleadings. She noted the parties were clearly on notice of this intent explicitly when Hartt filed various motions to amend the scheduling order and to abate any decision of motions to quash depositions.   The Court was now specifically on notice when the Magistrate Judge gave tacit approval of Hartt's intent to amend. (ROA.321).

64.    Pamela Hartt argued she met all the elements noted above. Here she wrote there is no evidence she acted in bad faith, or has delayed the proceedings or is has a of dilatory motive. She noted the more quickly a plaintiff files a motion to amend, the more likely it should be granted. Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 60-61 (1st Cir. 2018). Moreover amendment is not prejudicial if it merely adds theory of recovery to facts already pled and offered before discovery has ended. Laber v. Harvey, 438 F3d 404, 426-427 (4th Cir. 2006) as occurred in this case.  Further an amendment should be permitted that

merely clarifies legal theories. <u>Harrison v. Rubin,</u> 174 F3d 249, 253 (D.C. Cir. 1999). Hartt's argued her proposed *Second Amended Complaint* satisfies these elements.   (ROA.321).

65.   The District filed a *Response* and did not respond to Hartt's argument that by and through counsel, previously agreed to an amendment. In regard to the usual arguments against permitting a party to amend, they argued it would be prejudicial as it would require additional discovery and briefing.  (ROA.354). Hartt filed her *Reply* Hartt argued Hyden was *judicially estopped* from arguing she could not amend by nature of the prior understanding she would do so. Further, Hartt re-urged that she was diligent in her efforts to do so. (ROA.371).  Last, she noted the point the District Court never gave a  reason she could not amend her pleadings.  (ROA.372).

4.      The District Judge's Denied The Motion

66.   The Judge denied the *Motion For Leave To File The Second Amended Complaint*.   Most important and related to this appeal. the Judge wrote that Hartt's "bare bones" request was not sufficient.  Nor should she be permitted "endless bites at the pleading apple." (ROA.382, 383).

5.      The District Judge Abused His Discretion In Deny Hartt's Request To Amend

67.   First and foremost neither the School District or Hyden addressed the unique

pleadings, motions and orders in this case whereby Hartt specifically abated arguments so that discovery could ensue with the intent to file an amended complaint. Hartt believes such failure constituted waiver. <u>Plainscapital Bank v. Keller Indep. Sch. Dist</u>., 746 App'x 355, 364 (5th Cir. 2018). The District Judge likewise did not address this argument.

68. Moreover, while it is true there is caselaw rejecting the right to amend where there have been *repeated* attempts to do so, <u>Fountain v. Rupert</u>, 819 F. App'x 215, 218 (5th Cir. 2020) [record reflects Plaintiff was afforded multiple attempts] here Hartt only had one amended complaint. Hardly multiple, and not even *repeated* but one once, merely a repeat.

69. Last, the cases relied upon by the School District and later the Judge in denying the request to amend are outliers and not in accord with the overwhelming caselaw in support of Hartt's position. As eloquently stated in <u>Hitt v. Pasadena</u>, 561 F.2d 606 (5th Cir. 1977):

"As a general guide to the interpretation of the Federal Rules of Civil Procedure, the Supreme Court has said: "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>Conley v. Gibson</u>, 355 U.S. 41, 48, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957). It is the well-established policy of the federal rules that the plaintiff is to be given every opportunity to state a claim. As this court has often stated, a complaint is not subject to dismissal unless "it appears to be a certainty that the plaintiff cannot possibly be entitled to relief

under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity [for] the plaintiff to state a claim upon which relief [can] be granted." <u>Byrd v. Bates</u>, 220 F.2d 480, 482 (5th Cir. 1955)."

There the Panel determined that even if Judge Hitt could have exercised greater diligence plaintiff's loss from a dismissal with prejudice would be very severe as she could have cured certain defects with an appropriate amendment. Without doubt Hartt's case is even stronger than Hitt's. The claims against Hyden for stalking and intrusion upon seclusion are plausible and not futile. <u>Laber v. Harvey</u>, 438 F3d 404, 426-427 (4th Cir. 2006) [an amendment should be permitted that clarifies legal theories]; <u>Harrison v. Rubin,</u> 174 F3d 249, 253 (D.C. Cir. 1999) [amendment not prejudicial that adds theory of recovery to facts already pled and offered before discovery has ended].

C.      SUMMARY

70.     Hartt posits the District Judge committed a clear error of law, the first time in granting the School District's 12(b)(6) *Motion To Dismiss* when using an incorrect legal analysis. Given the opportunity to correct this error when Hartt filed her rule 59(e) *Motion For Reconsideration* and a related Rule 15(a) *Motion For Leave To File The Second Amended Complaint* the Judge erred again and abused his discretion in doing so.

## VII.  CONCLUSION AND PRAYER

71.   Appellant has provided significant plausible evidence that the District Court erred when granting the School District's *Motion To Dismiss* the first time. Additionally, she has provided plausible factual support and overwhelming legal argument that the motion for reconsideration be granted, as well as her motion to amend, Accordingly, the case should be remanded back to the District Court for further  proceedings. For the all foregoing reasons the Appellant respectfully requests this Panel reverse the decision of the District Court, remand the case for trial on the merits, and for any and all other relief that may be afforded, whether it be by equity, by law or by both.

Respectfully submitted,

/s/ Martin J. Cirkiel

Martin J. Cirkiel
Texas Bar No. 00783829
Cirkiel Law Group, P.C.
1005 West 41st Street, Suite 201
Austin, Texas 78756
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
COUNSEL FOR APPELLANT

# VII.  CERTIFICATE OF FILING AND SERVICE

This is to certify that on April 20, 2026 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which will send electronic notification of such filing to the following:

James E. Byrom, Attorney in Charge
State Bar No.  0 3568100
jbyrom@thompsonhorton.com [Email]
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 333-6144
COUNSEL FOR APPELLEES

/s/ Martin J. Cirkiel
Martin J. Cirkiel
Attorney Of Record For
Appellants-Plaintiffs

## VII.  CERTIFICATE OF COMPLIANCE

I further certify that the (1) required privacy redactions (if any) have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1 and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of copies of the foregoing document to the Clerk of the Court.

I further certify that two (2) true and correct copies of the foregoing document will be served to all counsel of record, when the 5th Circuit finds the brief "Sufficient", *via* Overnight Mail by Federal Express and addressed to Counsel, and the Clerk of The Court, as noted above.

/s/ Martin J. Cirkiel
Martin J. Cirkiel
Attorney Of Record For
Appellants-Plaintiffs

# CERTIFICATE OF COMPLIANCE

1.      Pursuant to Fed. R. App. P. 32(a)(7)( c) and Local Rule 32.3, the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and Local Rule 32.2 because:

> x       this brief contains 8,985 , excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Local Rule 32.2, or

> this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Local Rule 32.2.

2.      Pursuant to Fed. R. App. P. 32(a)(7)© and Local Rule 32.3, the undersigned certifies this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) and Local Rule 32.1 because:

> x       this brief has been prepared in a proportionally spaced typeface using Corel Word Perfect in 14 pt. Times New Roman, or

> this brief has been prepared in a monospaced typeface using Corel Word Perfect in 10½ characters per inch Times New Roman.

3.      THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN FED. R. APP. P. 32(a)(7) AND LOCAL RULE 32.2, MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

/s/ Martin J. Cirkiel
Martin J. Cirkiel